UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
CHALOS & CO, P.C.,

                     Plaintiff,

        -against-

                                   **REPORT &
RECOMMENDATION**
                                   23-CV-2523 (NJC)(AYS)

SRAM & MRAM RESOURCES BERHAD,
SRAM & MRAM TECHNOLOGIES &
RESOURCES INC., and SRAM & MRAM
GROUP,

                     Defendants.
---------------------------------------------------------

**ANNE Y. SHIELDS, Magistrate Judge:**

        Plaintiff Chalos & Co, P.C. ("Plaintiff" of "Chalos") commenced this action on April 1, 2023, against defendants SRAM & MRAM Resources Berhad ("SRAM Berhad"), SRAM MRAM Technologies & Resources Inc. ("SRAM Tech"), and SRAM & MRAM Group ("SRAM Group") (collectively "Defendants"), seeking payment for fees and costs for legal services rendered.

        Presently, before this Court, on referral from the Honorable Nusrat J. Choudhury, is Plaintiff's motion for default judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure.  (See Docket Entry ("DE") [27].) For the reasons set forth below, this Court respectfully recommends that Plaintiff's motion for default judgment be granted in part and denied in part.

BACKGROUND

I.    Facts

    A.  Parties

Plaintiff is a professional corporation organized under the laws of the State of New York, with its principal place of business in Oyster Bay, NY, (see Compl., DE [1], ¶ 1.) Defendant SRAM Berhad is a foreign corporation organized and existing under the laws of Malaysia, with a physical address at Suite B-3A-9 Block B Level 3A, Megan Avenue 11, 12 Jalan Yap Kwan Seng, 50450 WP Kuala Lumpur, Malaysia. (Id. ¶ 2.) SRAM Tech is a corporation organized and existing under the laws of the State of Delaware, conducting business in the state of California with a physical address at 1350 Murchison Drive, Millbrae, CA 94030. (Id. ¶ 3.) Defendant SRAM Group is a foreign corporation organized and existing under the laws of the United Kingdom, with a physical address at Lomond Court, Castle Business Park, Stirling, Stirlingshire, FK9 4TU, United Kingdom. (Id. ¶ 4.)

B.  The Agreement

In January 2022, Defendant SRAM Group, retained Plaintiff to provide legal services for SRAM Berhad, in a litigation matter commenced by Icure Pharmaceutical, Inc. ("Icure") pending in the Superior Court of California, County of Los Angeles, i.e. Icure Pharmaceutical, Inc. v. Sram & Rram Resources Berhad, et al, Case No. 22CMCV00130 ("California action"). (Id. ¶ 8.) The Representation Agreement (the "Agreement") was duly executed by SRAM Group's Chief Executive Officer Hemeleta Arumugam ("Arumugam") and set forth the terms of Plaintiff's legal representation. (Compl, Ex. 1, DE [1-1].) The Agreement established the hourly rates billed to Defendants, as well as the obligation of Plaintiff to render the requested and necessary services. (Id.) Defendants agreed to pay $500 per hour for Michael G. Chalos and $400 per hour for senior associates in the case. (Id. at p. 2.)

Plaintiff successfully defended the California action, defeating Icure's motion for Preliminary Injunction, defeating Icure's motion for Writ of Attachment, and obtaining an Order

staying the California action pending the outcome of ICC arbitration pursuant to mandatory law and jurisdiction clauses in various underlying sales contracts. (Compl. ¶¶ 12, 15.)

Pursuant to the Agreement, Defendants were invoiced on a monthly basis for services rendered. (Compl. ¶ 18.) On August 5, 2022. Plaintiff issued Invoice #14686 to Defendants, showing a total balance due to Plaintiff in the amount of $72,423.93; $21,804.60 of which being satisfied with a payment from Defendants' client trust account, and leaving a remaining balance of $50,619.33 (Id. ¶ 19; Compl. Ex. 3, DE [1-3], at p. 1-9.) On September 7, 2022, Plaintiff issued Invoice #14731 to Defendants, showing a total balance due of $120,115.65. (Compl. ¶ 20; Compl. Ex. 3 at p. 10-17.) Of that outstanding balance, $25,000 was satisfied with a payment from funds which were held in Plaintiff's Client Trust Account on behalf of Defendants. (Id.) This left a remaining balance of $95,115.65. (Id.) On October 12, 2022, Plaintiff issued Invoice # 14838 to Defendants, showing a total balance due to Plaintiff of $117,620.38. (Compl. ¶ 21; Compl. Ex. 3 at p. 18-23.) The full balance remains unsatisfied. (Id.)

On November 23, 2022, after not receiving payment for the prior invoices, Plaintiff issued a final invoice for all fees, costs, and expenses incurred through November 23, 2022. (Compl. ¶ 22; Compl. Ex. 3 at p. 24-26.) To date, the total outstanding invoices for legal fees and disbursements incurred on behalf of Defendants in the California action remains $124,163.78. (Id.)

In light of Defendants' failure to pay, On December 6, 2022, Plaintiff filed a motion with the Superior Court of California to be relieved as counsel for SRAM Berhad. (Compl. ¶ 25.) The motion was granted on January 5, 2023. (Compl. ¶ 26; Compl. Ex. 5, DE [1-5].)

II.    <u>Procedural History</u>

Plaintiff commenced this action on April 1, 2023. (<u>See</u> Compl.) The Summons and Complaint were served upon Defendant SRAM Berhad and SRAM Group on April 12, 2023. (DE [12], [13].) On April 13, 2023, the Summons and Complaint was served upon Defendant SRAM Tech. (DE [14]). On April 27, 2023, the case was referred the EDNY Court Annexed Arbitration Program pursuant to Local Civil Rule 83.7. (DE [15].)

On May 5, 2023, SRAM Tech moved the Court dismiss the complaint against it, claiming that they were not involved in the matter in any way. (DE [16].) On May 8, 2023, Plaintiff filed a letter requesting leave to file a motion to strike SRAM Tech's motion to dismiss the complaint. (DE [17].) Plaintiff argued that SRAM Tech was not permitted to appear in the action pro se, as SRAM Tech is a corporation. (<u>Id.</u>) A telephone conference regarding the motions was scheduled before the undersigned for May 15, 2023. (Scheduling Order dated 05/08/2023.) Despite notice to the Defendants, SRAM Tech failed to appear for the scheduled conference. (Scheduling Order dated 05/15/2013.) As SRAM Tech failed to appear for the May 15, 2023, the undersigned clarified that in federal litigation, corporate entities must be represented by counsel and therefore, that SRAM Tech is not permitted to appear pro se. (<u>Id.</u>) The undersigned respectfully recommended that the District Court hold Plaintiff's pre-motion letter request in abeyance through June 16, 2023, to allow the defendant corporation to retain counsel. (<u>Id.</u>)

On June 14, 2023, SRAM Tech requested a court appointed attorney. (DE [21]). On July 10, 2023, the District Court denied SRAM Tech's application. (DE [22].) The Court once again noted that the "Defendant, as a corporation, cannot represent itself *pro se* in an action filed in federal court." (<u>Id.</u>) The District Court further directed that "[i]f the Defendant does not retain counsel within 30 days of entry of this order, Plaintiff will be entitled to move for default judgment." (<u>Id.</u>)

On August 15, 2023, SRAM Tech again filed a request to appear pro se. (DE [26].) On August 28, 2023, the District Court again denied SRAM Tech's request and issued an order reiterating that "a corporation cannot represent itself *pro se* in an action filed in federal court." (Order dated 08/28/2023.) To date, SRAM Tech has not obtained counsel.

On July 11, 2023, Plaintiff requested that certificates of default be issued for SRAM Group and SRAM Berhad. (DE [23].) On July 19, 2023, Certificates of Default were issued for both. (DE [24].)  On August 10, 2023, following SRAM Tech's failure to retain counsel within the 30-day period proscribed by the District Court, Plaintiff requested that a certificate of default be issued for SRAM Tech. (DE [25].) To date, no action has been taken on Plaintiff's application.

On November 15, 2023, Plaintiff filed the instant motion for default judgment against all three of the defendants. (DE [27].) On November 22, 2023, upon review of Plaintiff's motion, the District Court ordered Plaintiff to "immediately serve the motion and all supporting documents on defendants and provide the Court with proof of service by November 29, 2023." (See Order dated 11/22/2023.) The District Court further ordered "plaintiff to identify legal authority showing why a default judgment is warranted against all three defendants when only defendant SRAM & MRAM Group had entered into a retainer agreement with plaintiff for legal services to defend against an action in the Superior Court of Los Angeles California by Icure Pharmaceutical for breach of contract." (Id.) On December 5, 2023, Plaintiff filed the requested Supplemental Memorandum of Law. (DE [29].) O March 8, 2024, the motion was referred to this Court for Report and Recommendation. (See Order dated 03/08/2024.)

DISCUSSION

I.    Legal Standard

A defending party who fails to adequately respond to a complaint risks default. Courts are directed to engage in a two-step process for the entry of a judgment against a party who fails to defend: first, the Clerk of Court enters default, and second, a judgment is entered on the default. See City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 128 (2d Cir. 2011). Rule 55(a) of the Federal Rule of Civil Procedure sets forth the first step as follows:

> When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.

Fed. R. Civ. P. 55(a). While a "typical" default is entered "because a defendant failed to file a timely answer[,] . . . a district court is also empowered to enter a default against a defendant that has failed to 'otherwise defend.'" Mickalis Pawn Shop, 645 F.3d at 129 (citing Fed. R. Civ. P. 55(a)) (other citation and bracket omitted).

When a court enters a default judgment, it "converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled. . . ." Mickalis Pawn Shop, 645 F.3d at 128. Simply because the Clerk enters a default, however, does not entitle the plaintiff to a default judgment. See Scottsdale Ins. Co. v. Priscilla Properties, LLC, 254 F. Supp. 3d 476, 484 (E.D.N.Y. 2017). A default judgment should be considered only as a "last resort." GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc., 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010) (citing Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981)). "[B]ecause defaults are generally disfavored and are reserved for rare occasions, when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 96 (2d Cir. 1993).

A.  Service

Service of a summons and complaint in a federal lawsuit is governed by Rule 4 of the Federal Rules of Civil Procedure. Under Rule 4(h), a foreign corporation must be served "in a judicial district of the United States ... or at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery." Rule 4(f)(1), in turn, permits service outside the United States "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention." Subject to enumerated restrictions, Rule 4(f)(2) permits alternative service "if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice." Finally, Rule 4(f)(3) provides that service on a foreign litigant can be effected "by other means not prohibited by international agreement, as the court orders." As a general matter, "'[t]he only limitations on Rule 4(f)(3) are that the means of service must be directed by the court and must not be prohibited by international agreement.'" Advanced Aerofoil Techs., AG v. Todaro, No. 11 Civ. 9505(ALC)(DCF), 2012 WL 299959, at *1 (S.D.N.Y. Jan. 31, 2012) (quoting Ehrenfeld v. Salim a Bin Mahfouz, No. 04 Civ. 9641(RCC), 2005 WL 696769, at *2 (S.D.N.Y. Mar. 23, 2005)).

1. Service on SRAM Group

As set forth in the Affidavit of Service filed on April 12, 2023, the summons and complaint were served upon SRAM Group, located in the United Kingdom, via Fed Ex, on April 12, 2023. (See DE [13].)

As both the United States and the United Kingdom are signatories to the Hague Convention, that pact governs service of process by transmittal of documents abroad in this case. See, e.g., Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 699, 705,

108 S. Ct. 2104, 100 L. Ed. 2d 722 (1988) (dictum) ("Compliance with the Convention is mandatory in all cases to which it applies...."); Hague Convention art. 1 ("The present Convention shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad."); Fed. R. Civ. P. 4 advisory committee's note ("Use of the Convention procedures, when available, is mandatory if documents must be transmitted abroad to effect service."). The Hague Convention requires signatory countries to establish a Central Authority to receive requests for service of documents from other countries and to serve those documents. See Hague Convention arts. 2–6. In addition, Article 10 allows for service by other means, such as service "by postal channels" or through judicial officers, "[p]rovided the State of destination does not object." Id. art. 10; see Burda Media, Inc., 417 F.3d at 300 (listing "several alternate methods of service" under the Hague Convention). Accordingly, as Plaintiff utilized "postal channels" to serve SRAM Group, service is proper.

    2.  SRAM Berhad

As set forth in the Affidavit of Service filed on April 12, 2023, the summons and complaint were served upon SRAM Berhad, located in Malaysia, via Fed Ex, on April 12, 2023. (See DE [12].)

As Malaysia is not a signatory to the Hague Convention or any other international process treaty, 22 C.F.R. § 92.54 governs foreign service. Letters rogatory through diplomatic channels are mandated for formal service in all countries not parties to an international process treaty. Simply stated, a letter rogatory is a "document issued by one court to a foreign court[.]" Black's Law Dictionary 778 (9th ed. abridged 2009). "In its broader sense in international practice, the term letters rogatory denotes a formal request from a court in which an action is

pending, to a foreign court to perform some judicial act," 22 C.F.R. § 92.54, While letters

rogatory may be utilized to "serve process on an individual or corporation within the foreign

jurisdiction[,]" parties may also use letters rogatory to "take evidence from a specific person

within the foreign jurisdiction." Black's Law Dictionary 778; see also Intel Corp. v. Advanced

Micro Devices, Inc., 542 U.S. 241, 248 n. 1, 124 S. Ct. 2466, 159 L.Ed.2d 355 (2004) ("[A]

letter rogatory is the request by a domestic court to a foreign court to take evidence from a

certain witness.") (citation omitted). Both private parties, including corporations and natural

persons, and governmental entities—whether in U.S. or foreign litigation—may seek the

issuance of letters rogatory "for use in both underlying civil lawsuits and underlying criminal

prosecutions." In re Premises Located at 840 140th Ave. NE, Bellevue, Wash., 634 F.3d 557,

562 (9th Cir. 2011) ("In re Premises").

Where U.S. courts issue and then transmit letters rogatory directly to foreign courts for

enforcement, courts in the receiving country enforce the letters rogatory pursuant to domestic

statute or common law, or through bilateral treaties with the United States. See generally

Restatement (Third) of the Foreign Relations Law of the United States (1987) ("Restatement") §

473 Reporters' Note 1.

Here, Plaintiff failed to request that the Court issue letters rogatory to effect service on

SRAM Berhad. As Malaysia is not a party to any international service of process treaties, service

via postal channels such as Fed Ex, is improper. Accordingly, service upon SRAM Berhad was

improper. Thus, SRAM Berhad has not been duly served.

3. SRAM Tech

As set forth in the Affidavit of Service filed on April 17, 2023, SRAM Tech, a Delaware

corporation, was duly served on April 13, 2023, pursuant to Fed. R. Civ. P. 4(h) and 4(e). (DE

[14].)

The Court now turns to assess the viability of the factual allegation in Plaintiff's

Complaint relating to liability against only SRAM Group and SRAM Tech.

II.    Liability

Following the Clerk's entry of default, this Court considers as true all factual allegations

in Plaintiff's Complaint relating to liability. See Cement & Concrete Workers Dist. Council

Welfare Fund v. Metro Found. Contractors Inc., 699 F.3d 230, 234 (2d Cir. 2012). But the court

still must determine whether the factual allegations, taken as true, establish the Defendants'

liability as a matter of law. See Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) (following

entry of default, the court is "required to determine whether the [plaintiff's] allegations establish

[defendant's] liability as a matter of law").

A.  Choice of Law

A federal district court sitting in diversity applies the substantive law of the forum state,

including that state's choice-of-law rules. See Lazard Freres & Co. v. Protective Life Ins. Co.,

108 F.3d 1531, 1538-39 (2d Cir. 1997).

New York follows the "center of gravity" or "grouping of contacts" approach to resolve

choice-of-law issues in a breach of contract case. See Lazard Freres & Co., 108 F.3d at1539.

Under that approach, in order to determine which state's law applies, courts must weigh factors

such as (1) the place of negotiation, contracting, and performance; (2) the location of the

contract's subject matter; and (3) the domicile, place of incorporation, and place of business of

the contracting parties. See id. at 1539-40. Where a contract contains a choice-of-law clause,

however, and "a court finds that ... [the] clause is valid, the law selected in the clause dictates

how the contract's provisions should be interpreted[.]" <u>Fin. One Pub. Co. v. Lehman Bros. Special Fin., Inc.</u>, 414 F.3d 325, 332 (2d Cir. 2005)

Here, the Agreement contains a choice-of-law clause dictating that "[t]his agreement shall be governed and construed in accordance with the laws of the State of New York." (<u>See</u> Compl, Ex. 1 at p. 4.) As the choice-of-law clause is valid, New York law shall apply.

1. <u>Breach of Contract</u>

"To state a claim for breach of contract under New York law, 'the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages.'" <u>Orlander v. Staples, Inc.</u>, 802 F.3d 289, 294 (2d Cir. 2015) (quoting <u>Johnson v. Nextel Commc'ns, Inc.</u>, 660 F.3d 131, 142 (2d Cir. 2011)); <u>see also</u> <u>Noise In the Attic Prods., Inc. v. London Records</u>, 782 N.Y.S.2d 1, 3 (App. Div. 2004) (discussing the elements of a breach of contract claim).

a. <u>SRAM Group</u>

Plaintiff has successfully alleged facts demonstrating the existence of a valid contract and that Plaintiff fully performed its obligation to represent SRAM Berhad in the California action. (<u>See</u> Declaration of Briton P. Sparkman ("Sparkman Decl."), DE [27-2], ¶¶ 4-25.) Plaintiff has also successfully alleged facts demonstrating that SRAM Group failed to pay for the fees, costs, and expenses incurred and Plaintiff has suffered damages. (<u>Id.</u>) The allegations are sufficient, taken as true, to support an entry of a default judgment on the breach of contract claim against SRAM Group.

b. <u>SRAM Tech</u>

Notwithstanding Plaintiff's supplemental briefing setting forth legal authority for why a default judgment is warranted against SRAM Tech when SRAM Group is the only signatory to

the Agreement, Plaintiff has failed to successfully allege facts to support a breach of contract claim against SRAM Tech.

The Complaint fails to set forth that SRAM Tech was a party to the Agreement. While Plaintiff's supplemental brief argues that it was the understanding of SRAM Group and Plaintiff that Plaintiff would be representing SRAM Tech, there is no evidence to support such a claim. Indeed, SRAM Tech's own submissions to this Court when requesting the appointment of counsel, make clear that SRAM Tech was in no way involved with this Agreement. As the Agreement is devoid of a signature by SRAM Tech, at this juncture, the Court agrees with such an assessment. When evaluating the award of a default judgment, the Court must determine whether the factual allegations, taken as true, establish the Defendants' liability as a matter of law. See Finkel, 577 F.3d at 84. Here, when taken as true, the Complaint does not establish the existence of a contract between Plaintiff and SRAM Tech. Accordingly, this Court recommends the denial of Plaintiff's motion as to its breach of contract claim against SRAM Tech.

    2.  Account Stated

The Complaint includes an account stated claim against the Defaulted Defendants. The Court finds that this claim is duplicative of Plaintiff's breach of contract claim and recommends denial of Plaintiff's motion as to this claim.

"[C]laims are duplicative of one another if they 'arise from the same facts ... and do not allege distinct damages.'" NetJets Aviation, Inc. v. LHC Commc'ns, LLC, 537 F.3d 168, 175 (2d Cir. 2008) (quoting Sitar v. Sitar, 854 N.Y.S.2d 546, 538 (App. Div. 2008)).

"[I]f a plaintiff can prove an enforceable contract and the plaintiff's account stated claim seeks the same relief as its breach of contract claim, the account stated claim may be dismissed as duplicative." OOCL (USA) Inc. v. Transco Shipping Corp., No. 13-CV-5418, 2015 WL

9460565, at *6 (S.D.N.Y. Dec. 23, 2015); <u>see also</u> <u>Prof'l Merch. Advance Capital, LLC v. C</u>

<u>Care Servs., LLC</u>, No. 13-CV-6562, 2015 WL 4392081, at *6 (S.D.N.Y. July 15, 2015)

("[B]ecause the Court has already found that Defendants are liable for breach of contract and

guarantee, and because unjust enrichment and account stated would be duplicative of those

claims, the Court ... dismisses those claims *sua sponte*."); <u>Media Tenor Int'l AG v. Medco Health</u>

<u>Sols., Inc.</u>, No. 13-CV-7223, 2014 WL 2933215, at *8 (S.D.N.Y. June 27, 2014) ("'If plaintiff

can prove an enforceable contract, then it will be able to recover under [that] cause of action,'

and the account stated claim can be dismissed." (quoting <u>Martin H. Bauman Assocs., Inc. v. H &</u>

<u>M Int'l Transp., Inc.</u>, 567 N.Y.S.2d 404, 408 (App. Div. 1991))). Where an account stated claim

entitles a plaintiff to different damages from the breach of contract claim, it is not duplicative.

<u>See</u> <u>NetJets Aviation</u>, 537 F.3d at 175 (reversing district court's dismissal of account stated claim

where it was not duplicative of breach of contract claim in light of the availability of attorneys'

fees pursuant to the contract underlying the account stated claim).

Here, Plaintiff seeks the same damages pursuant to both the breach of contract and

account stated claims. (Compl. ¶ 33 (seeking $124,163.78 in compensatory damages); <u>id.</u> ¶ 38

(seeking $124.163.78 in compensatory damages).) Because these claims are duplicative, the

Court recommends denial of Plaintiff's motion as to the account stated claim against the

Defendants. <u>See</u> <u>Eastman Kodak Co.</u>, 2010 WL 2710975, at *2 (granting default judgment as to

breach of contract claim but declining as to "alternate claims for unjust enrichment, account

stated, conversion and replevin are dismissed as duplicative and/or insufficiently stated").

B.  <u>Damages</u>

Having found that Plaintiff has adequately alleged that SRAM Group is liable for breach

of contract, the Court assesses the damages to which Plaintiff is entitled for that claim.

Under New York law, "[a] party injured by breach of contract is entitled to be placed in the position it would have occupied had the contract been fulfilled according to its terms." Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc., 500 F.3d 171, 185 (2d Cir. 2007) (citing Boyce v. Soundview Tech. Group, Inc., 464 F.3d 376, 384 (2d Cir. 2006)). On a motion for default judgment, "[w]hile a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors Inc., 699 F.3d 230, 234 (2d Cir. 2012) (alteration in original) (quoting Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992)). "Upon entry of a default, a plaintiff's claims for damages generally must be established in an evidentiary proceeding at which the defendant is afforded the opportunity to contest the amount claimed," however, "such a hearing is not mandatory." Id. No hearing is required "as long as it ensured that there was a basis for the damages specified in the default judgment," Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 111 (2d Cir. 1997) (citations omitted), and this requirement may be satisfied "upon a review of detailed affidavits and documentary evidence," Metro Found. Contractors Inc., 699 F.3d at 234. See also McLean v. Wayside Outreach Dev. Inc., 624 F. App'x 44, 45 (2d Cir. 2015) ("Even when the [district] court determined damages with the aid of a single affidavit only partially based upon real numbers, we have not found an abuse of discretion in the district court's failure to hold an evidentiary hearing." (citations and internal quotation marks omitted)).

1.  Unpaid Invoices

Here, in light of the documentary evidence submitted in support of Plaintiff's motion, the

Court is able to sufficiently determine damages without an evidentiary hearing. Plaintiff seeks $124,163.78 in damages based on SRAM Group's breach of contract. (Sparkman Decl. ¶ 24.) This amount is supported by the Agreement and invoices submitted by Plaintiff. (Compl. Ex. 1; id., Ex. 3.) Accordingly, this Court respectfully recommends that that Plaintiff be awarded $124,163.78 for unpaid invoices.

2. Prejudgment Interest

Plaintiff seeks prejudgment interest on the default judgment. (Monroe Aff. ¶¶ 11–12.) Pursuant to section 5001 of New York Civil Practice Law and Rules, a party shall recover prejudgment interest "upon a sum awarded because of a breach of performance of a contract." N.Y. C.P.L.R. § 5001(a); see also Rhodes v. Davis, 628 F. App'x 787, 794 (2d Cir. 2015) (Under New York Law, "[i]nterest is generally mandatory 'upon a sum awarded because of a breach of performance of a contract ....'" (citing Id. § 5001(a))). Section 5004 sets the rate of prejudgment interest at nine percent. N.Y. C.P.L.R. § 5004. When calculating the interest due, it "shall be computed from the earliest ascertainable date the cause of action existed." Id. § 5001(b). "In New York, a breach of contract cause of action accrues at the time of the breach." Ely-Cruikshank Co. v. Bank of Montreal, 81 N.Y.2d 399, 402 (1993) (citations omitted).

Here, in light of SRAM Group's breach of contract, the Court finds that Plaintiff is entitled to prejudgment interest at a rate of nine percent. Plaintiff seeks prejudgment invoice from the date of the most recent outstanding invoice, Invoice #14686, dated November 23, 2022. (DE [1-3] at p. 24-26.) Accordingly, this Court respectfully recommends that prejudgment interest be calculated from the date of November 23, 2022, at the New York statutory rate of nine percent annum through the date of judgment.

3. Attorneys' Fees

Plaintiff also seeks an award of $21,900 in attorney's fees for the present action. (Sparkman Decl. ¶ 35); Apex Mar. Co. v. Furniture, Inc., No. 11-CV-5365, 2013 WL 2444151, at *4 (E.D.N.Y. June 5, 2013) ("Courts may also award fees pursuant to an applicable statute or contract between the parties."). "In New York, a party is entitled to recover attorneys' fees if such recovery is 'authorized by agreement between the parties.'" Billybey Marina Servs., LLC v. Affs. Afloat, Inc., No. 14-CV-6722, 2016 WL 1266608, at *4 (E.D.N.Y. Mar. 11, 2016) (quoting Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186, 199 (2d Cir. 2003)), report and recommendation adopted, 2016 WL 1271479, at *1 (Mar. 30, 2016). Here, the Agreement allows for the collection of attorney's fees and court costs by Plaintiff. ((Compl., Ex. 1 at p. 4.) ("In any action arising from or related to this agreement, CHALOS & CO, P.C. shall be entitled to recover costs, fees (including reasonable attorneys' fees) and expenses in addition to all other available relief.")).

The starting point for determining the amount of attorney's fees to be paid by Defendants is calculation of the "lodestar," which is "calculated as the product of the reasonable number of hours worked and a reasonable hourly rate." Agudath Isr. of Am. v. Hochul, No. 22-38, 2023 WL 2637344, at *1 (2d Cir. Mar. 27, 2023). When assessing whether legal fees are reasonable, the Court determines the "presumptively reasonable fee" for an attorney's services by examining what reasonable clients would be willing to pay. See id. (citing Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 183–84 (2d Cir. 2008)). To calculate the presumptively reasonable fee, a court must first determine a reasonable hourly rate for the legal services performed. Id. The next step is to determine the reasonableness of the hours expended by counsel. See, e.g., LaBarbera v. Empire State Trucking, Inc., No. 07-CV-669, 2008 WL 746490, at *4-5 (E.D.N.Y. Feb. 26, 2008), report and recommendation adopted, 2008 U.S.

Dist. LEXIS 21770, at *3 (Mar. 17, 2008). The number of hours spent on a lawsuit are considered unreasonable if they are excessive, redundant, or unnecessary. Raja v. Burns, 43 F.4th 80, 87 (2d Cir. 2022); see, e.g., LaBarbera v. Frank J. Batchelder Transp. LLC, No. 08-CV-3387, 2009 WL 240521, at *4 (E.D.N.Y. Feb. 2, 2009) (citing Gierlinger v. Gleason, 160 F.3d 858, 876 (2d Cir. 1998)) (adopting report and recommendation). "District courts have broad discretion, using their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of each component of a fee award." Finkel v. Captre Elec. Supply Co., No. 14-CV-3584, 2015 WL 5316257, at *5 (E.D.N.Y. July 31, 2015) (quotations omitted), report and recommendation adopted, 2015 WL 5330388, at *1 (Sept. 11, 2015).

Turning first to the reasonable hourly rate, the Court first examines the experience and qualifications of counsel seeking the fee award. "The burden is on the party moving for attorney's fees to justify the hourly rates sought." Brown v. Green 317 Madison, LLC, No. 11-CV-4466, 2014 WL 1237448, at *5 (E.D.N.Y. Feb. 4, 2014) (citing Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S. Ct. 1933, 76 L.Ed.2d 40 (1983)), report and recommendation adopted, 2014 WL 1237127, at *1 (Mar. 25, 2014). That is, "the fee applicant [has the burden] to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Id. (quoting Blum v. Stenson, 465 U.S. 886, 895 n.11, 104 S. Ct. 1541, 79 L.Ed.2d 891 (1984)); see also Farbotko v. Clinton County, 433 F.3d 204, 208 (2d Cir. 2005) ("The relevant community ... is the district in which the court sits.").

Plaintiff seeks attorney's fees for the work conducted by two named attorneys and "junior associates." Senior partner Michael Chalos requests an hourly rate of $500. (Sparkman Decl. ¶ 21). He has been practicing law for more than 40 years. (Id. ¶ 16.). "He has extensive experience

handling admiralty and maritime matters as well as commercial civil litigation. (Id.). Briton Sparkman requests an hourly rate of $400. (Id. ¶ 21.) He has been practicing law for nearly 15 years and also specializes in maritime and admiralty litigation as well as complex commercial civil litigation. (Id. ¶ 15.) Although Plaintiff provides the hourly rate billed by junior associates, $250, (id. ¶ 21), no information regarding the junior associates is provided. The billing records reflect billings for a Christopher Boyd ("Mr. Boyd"), but no information has been provided regarding Mr. Boyd's experience.

The Court finds the hourly rates charged—ranging from $400 to $500—to be commensurate with fees charged by attorneys in this circuit for comparable work. See Claud v. Brown Harris Stevens of the Hamptons, LLC, No. 2:18-cv-01930, 2024 WL 245261, *4 (Jan. 23, 2024) (awarding Plaintiff's attorney an hourly rate of $550 because inter alia "a rate of $550 per hour is consistent with the high-end of recent prevailing hourly rates used to calculate fee awards for experienced litigators in this District."); Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay, No. 10-cv-2262, 2019 WL 2870721, at *10 (E.D.N.Y. June 18, 2019), report and recommendation adopted, 2019 WL 2869150 (E.D.N.Y. July 3, 2019) (awarding Plaintiff's lawyer in a civil rights case with a more than fifty-year career litigating similar cases an hourly rate of $600 per hour); Schwartz v. United States Drug Enforcement Administration, No. 13-CV-5004, 2019 WL 1299192, at *9 (E.D.N.Y. March 1, 2019) (awarding $500 hourly fee to partner litigating FOIA litigation, and listing awards of between $500 and $655 per hour for partners handling complex litigation), adopted by, 2019 WL 1299660 (E.D.N.Y. Mar. 21 2019); McLaughlin v. IDT Energy, No. 14 CV 4107, 2018 WL 3642627, at *17 (E.D.N.Y. July 30, 2018) (finding award of rates typical to the Eastern District and noted to be: "$550 for partners/equity owners with more than thirty years of experience, $500 for partners/equity

owners with more than fifteen years of experience, $450 for partners/equity owners with more than ten years of experience, $400 for senior associates/associates with more than ten years of experience, $350 for senior associates/associates with six to nine years of experience, $300 for associates with three to five years of experience, $250 for associates with fewer than three years of experience") (report and recommendation). Because both attorneys have over a decade of legal experience, the Court finds that it is appropriate to award them an hourly rate within the range of that awarded in other similar actions. However, because the application is devoid of any information regarding Christopher Boyd, the Court declines to award him an hourly rate.

After determining the reasonableness of the hourly rate, "[a] court determines whether the hours claimed by the prevailing side were 'reasonably expended,' and adjusts the award accordingly. District courts are then charged with factoring in 'other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the results obtained.'" Holick v. Cellular Sales of N.Y., LLC, 48 F.4th 101, 106 (2d Cir. 2022) (quoting Hensley, 461 U.S. at 433–34, 103 S.Ct. 1933).

"[A] district court properly excludes documented hours that are excessive, redundant, or otherwise unnecessary." Oriska Corp. v. Garden Care Ctr., Inc., No. 21-CV-2010, 2022 WL 2834940, at *2 (E.D.N.Y. July 20, 2022) (adopting report and recommendation); see Raja, 43 F.4th at 87 (quotations omitted). As such, "fees should not be awarded for time expended on an unsuccessful motion." DeMarco v. Ben Krupinski Gen. Contractor, Inc., No. 12-CV-573, 2014 WL 3696020, at *9 (E.D.N.Y. July 22, 2014) (collecting cases). "When reviewing a fee application, a district court should 'examine the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case,' and if it 'concludes that any expenditure of time was unreasonable, it should exclude these hours' from

19

the fee calculation." Agudath Isr. of Am., 2023 WL 2637344, at *2 (alteration omitted) (quoting

Luciano v. Olsten Corp., 109 F.3d 111, 116 (2d Cir. 1997)). Courts reduce attorney's fees for

"work done on motions that were never filed, on claims that were abandoned, on motions that

were unreasonable or had little chance of success, and on submissions that failed to comply with

court orders." Murray v. Marshall, No. 15-CV-599, 2020 WL 5899851, at *6 (E.D.N.Y. Mar. 16,

2020) (quotations omitted), report and recommendation adopted as modified, 2020 WL 3819075,

at *2 (July 8, 2020). "[T]he critical factor in determining whether to reduce counsel's hours

because of unsuccessful claims is the degree to which counsel achieved success in the lawsuit as

a whole." Restivo v. Nassau County, No. 06-CV-6720, 2015 WL 7734100, at *3 (E.D.N.Y. Nov.

30, 2015), aff'd sub nom. Restivo v. Hessemann, 846 F.3d 547, 592 (2d Cir. 2017).

Defendants should not be liable—for time spent on failed motion practice. Quaratino v.

Tiffany & Co., 166 F.3d 422, 427 (2d Cir. 1999) ("[F]ees should not be awarded for time spent

on [the] unsuccessful motion[.]"); e.g., Gonzalez v. Scalinatella, Inc., 112 F. Supp. 3d 5, 13

(S.D.N.Y. 2015) (reducing attorney fee award for time spent attributable to the unsuccessful

motion).

Plaintiff submitted contemporaneous billing records motion showing the legal services

rendered, including the dates that the services were provided, the amount of time during which

services were provided, and a brief description of each service. (DE [27-10].) According to the

billing records submitted, discounting the 24.7 hours spent by Christopher Boyd, counsel spent a

total of 37.9 hours on this matter, incurring $14,375.00 in legal fees before costs for

"[t]elephone, photocopy, telefax, postage." (Id.). Having reviewed the hours and time records

submitted, the Court finds the hours expended by Chalos to be unreasonable. Given the minimal

amount of time and labor required, the lack of complexity and repetitive "boilerplate" nature of

litigating a default judgment, the lack of diligence in this particular motion where Plaintiff has failed to even properly identify attorneys billing for the instant matter, and the fact that Plaintiff is unsuccessful in obtaining the default against two of the three Defendants the Court reduces the remaining attorney's fees of $14,375 by 66% to a total of $4,791.67. See Joe Hand Promotions, Inc. v. Terranova, No. 12-CV-3830 (FB) (VVP), 2014 WL 1028943, at *9 (E.D.N.Y. Mar. 14, 2014) (reducing attorneys' fees by 66%, given "the absence of contemporaneous billing records, as well as the excessiveness of the hours and the unreasonableness of the rates"); Joe Hand Promotions, Inc. v. Zyller, No. 11-CV-03762 (NGG) (VVP), 2014 WL 59979, at *8 (E.D.N.Y. Jan. 7, 2014) (same). The Court thus finds that an award of $4,791.67 would adequately and reasonably compensate Plaintiff for the time spent on this case in light of the success of the motion and the information provided to the Court regarding the billing records.

    4.  Costs

    Plaintiff seeks reimbursement for costs consisting of $402 in court filing fees and $1716 in legal costs identified in their time records. (DE [27-12].) Ordinarily, plaintiffs may recover "[c]osts relating to filing fees, process servers, postage, and photocopying." Teamsters Loc. 814 Welfare Fund v. Dahill Moving & Storage Co., 545 F. Supp. 2d 260, 269 (E.D.N.Y. 2008). Only those costs that are tied to "identifiable, out-of-pocket disbursements" are recoverable. Moon v. Gab Kwon, No. 99-CV-11810, 2002 WL 31512816, at *8 (S.D.N.Y. 2002) (quoting Kuzma v. IRS, 821 F.2d 930, 933–34 (2d Cir. 1987)).

    Filing fees are recoverable without supporting documentation if verified by the docket. E.g., Shalto v. Bay of Bengal Kabob Corp., No. 12-CV-920, 2013 WL 867420, at *2 (E.D.N.Y. Mar. 7, 2013) (adopting report and recommendation in part); Philpot v. Music Times LLC, No. 16-CV-1277, 2017 WL 9538900, at *11 (S.D.N.Y. Mar. 29, 2017) (stating that the filing fee is

"a fact of which the Court can take judicial notice"), report and recommendation adopted, 2017 WL 1906902, at *2 (May 9, 2017). Both the docket and Plaintiff's receipt indicate the $402 filing fee was paid. Therefore, the requested amount of $402 for the filing fee is awarded.

The Court also awards the reported costs for "[t]elephone, photocopy, telefax, postage" for a total of $876.00. (DE [27-12] at p. 8). See, e.g., Billybey Marina Servs., 2016 WL 1266608, at *5 (recommending an award of $730.16 in costs, including the filing fees); Coventry Credit Union, 2019 WL 13274547, at *8 (awarding $627.90 in default judgment litigation costs); M/Y FORTUNA, 2013 WL 1148920, at *9 (granting award for disbursements totaling $1,014.81). However, it declines to award the unsubstantiated charge of $150 for "October legal research." (Id.) Chen v. Shanghai Café Deluxe, Inc., No. 16-CV-4790, 2023 WL 2401376, at *17 (S.D.N.Y. Mar. 8, 2023) ("Plaintiff has not provided any documentation to substantiate these costs. Plaintiff is thus not entitled to an award for any of these unsubstantiated costs.") (collecting cases). As, Plaintiff has provided receipts and documentation for the remaining requested costs, this Court awards $1,968.00 in costs.

CONCLUSION

This Court respectfully recommends that the Plaintiff's motion for default judgment be granted in part and denied in part. The Court recommends denial of the motion to the extent that it seeks a default judgment against SRAM Berhad and SRAM Tech. The Court recommends the motion be granted to the extent that it seeks a default judgment against SRAM Group. Further, the Court respectfully recommends that $124,163.78 should be awarded to Plaintiff for SRAM Group's breach of contract, and that Plaintiff be awarded prejudgment interest to be calculated from the date of November 23, 2022, at the New York statutory rate of nine percent annum through the date of judgment. The Court additionally recommends that Plaintiff be awarded

$4,791.67 in attorneys' fees and $1,968.00 in costs.


## OBJECTIONS

A copy of this Report and Recommendation is being provided to all counsel via ECF. Plaintiff is directed to serve a copy of this Report and Recommendation by overnight mail and first-class mail to Defendants at their last known address(es) and to file proof of service on ECF by July 23, 2024. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of filing of this report.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b).  Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections.  Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or Court of Appeals. Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision").


Dated:  Central Islip, New York
        July 19, 2024

                                          /s/ Anne Y. Shields
                                          ANNE Y. SHIELDS
                                          United States Magistrate Judge